THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 5:21-cv-503-BO

| | |
|---|---|
| JONATHAN KEITH, MARTHA BAXLEY, and RUDOLPH BAXLEY<br>   Appellants,<br><br>v.<br><br>HOLMES P. HARDEN, Trustee of the Estate of Brandon Scottt Baxley<br><br>   Appellee. | ORDER |

This cause comes before this Court on appeal [DE 1] of an Order of the bankruptcy court for the Eastern District of North Carolina entered on December 7, 2021, finding appellants in contempt and awarding sanctions. For the reasons discussed below, the appeal [DE 1] is DENIED, and the Order [DE 101][1] of the bankruptcy court is AFFIRMED.

**BACKGROUND**

The Baxley Corporation ("Baxley"), controlled by its managers (Jonathan Keith, Martha Baxley, and Rudolph Baxley), filed for Chapter 7 bankruptcy. During a sanctions hearing on November 9, 2021, the bankruptcy court transferred control of Baxley to trustee (Holmes P. Harden). The court scheduled a Temporary Restraining Order (TRO) hearing for November 10, 2021. If granted, that TRO would likely prohibit the managers from transferring Baxley's funds. This is important because the managers had lent Baxley thousands of dollars, but hadn't yet been

---

[1] Case No.: 18-03406-5-DMW

1

repaid. After the sanctions hearing, but before the TRO was issued, the managers deposited five checks, initiating the transfer of $183,800 Baxley funds to manager-controlled accounts.

Three of those five checks were overnighted by FedEx to TD Ameritrade on November 9, 2021. These "Ameritrade checks" were delivered to Ameritrade on November 10, 2021, at 10:20 a.m. Two were made out to Martha Baxley ($54,900), and one was made out to Rudolph Baxley's wife ($75,000). There is no definitive evidence of when the funds from the Ameritrade checks fully cleared.

The other two checks ($53,900) were made out to Martha Baxley and were personally deposited at the Coastal Federal Credit Union ("CFCU") in Raleigh on November 9, 2021, at 3:38 p.m. The funds did not clear until November 17, 2021.

| Check # | Deposit Date | Clearance Date | Means of Deposit | Recipient | Amount |
|---|---|---|---|---|---|
| 10344 | 11/9/2021, 3:38 p.m. | 11/17/2021 | CFCU – Raleigh | Martha Baxley | $29,400.00 |
| 10335 | 11/9/2021, 3:38 p.m. | 11/17/2021 | CFCU – Raleigh | Martha Baxley | $24,500.00 |
| 10515 | 11/10/2021, 10:20 a.m. | | Ameritrade – FedEx | Martha Baxley | $19,900.00 |
| 10527 | 11/10/2021, 10:20 a.m. | | Ameritrade – FedEx | Martha Baxley | $35,000.00 |
| 10526 | 11/10/2021, 10:20 a.m. | | Ameritrade – FedEx | Constance Baxley (Rudolph Baxley's wife) | $75,000.00 |

By the time the TRO was issued on the afternoon of November 10, all five checks had been deposited. The TRO prohibited the transfer of any Baxley property. None of the managers attempted to cancel the transactions.

| Date | Time | Event |
|---|---|---|
| November 9, 2021 | 11:30 a.m. | Sanctions hearing and bankruptcy court's oral ruling announced |
| November 9, 2021 | 3:38 p.m. | Martha Baxley deposits the CFCU checks |
| November 9, 2021 | 4:08 p.m. | Motion for TRO filed by appellee |
| November 10, 2021 | 10:20 a.m. | FedEx delivers Ameritrade checks |
| November 10, 2021 | 11:30 a.m. | TRO hearing held, and court orally granted TRO |
| November 10, 2021 | 4:14 p.m. | Written TRO entered |
| November 10, 2021 | | Baxley manager's attorney notifies the managers of the TRO |
| | | Ameritrade checks fully clear |
| November 17, 2021 | | CFCU checks fully clear |

The TRO also required the managers to "immediately tender all financial records of any and all assets of Baxley Corp and Baxley Leasing to the Trustee." The managers had the login credentials to access Baxley's Pinnacle bank account – the same one from which the $183,800 was being transferred. DE 15 at 42; DE 15 at 115. The managers did not hand over the credentials until the $183,800 had cleared the Baxley account. DE 15 at 15-16.[2] In addition, there were boxes of financial documents stored in Baxley's corporate headquarters (Martha Baxley's basement). None of the managers turned over these documents. DE 15 at 41.

When trustee learned about transfers, he motioned for an Order to Show Cause. After a hearing, Judge Warren found the managers in contempt of court for violating the TRO in four ways:

---

[2] At the Show Cause hearing, the managers still had not provided the online credentials, forcing the court to recess until the managers handed them over.

3

"(1) failing to provide or otherwise inform Plaintiff of Baxley Corp's online banking account information;

(2) failing to turnover to Plaintiff numerous boxes of documents stored in the basement of Defendant Martha Baxley's home;

(3) failing to stop or prevent the transfer of $183,800.00 from Baxley Corp's bank account to Defendant Martha Baxley and Constance Baxley, wife of Defendant Rudolph Baxley; and

(4) failing to reverse the Transfers after the issuance of the TRO."

DE 12 at 54–55. Judge Warren ordered the managers to repay the $183,800 and compensate trustee for the cost of litigating their contempt ($18,134.20).[3] The total amount was $201,934.20. In their appeal, the managers make many arguments, none of which persuade this Court.

## DISCUSSION

Jurisdiction over this appeal is proper pursuant to 28 U.S.C. § 158(a), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees ... of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title."

I.  **Civil Contempt**

A bankruptcy court has the authority to hold a party in civil contempt and to impose sanctions. 11 U.S.C. § 105(a); *In re Walters,* 868 F.2d 665, 670 (4th Cir. 1989).

Here, the managers were held in civil contempt for:

(1) failing to provide or otherwise inform Plaintiff of Baxley Corp's online banking account information;
(2) failing to turnover to Plaintiff numerous boxes of documents stored in the basement of Defendant Martha Baxley's home;

---

[3] $4,125.00 for trustee's time, $1,225.00 for accountant's time, and $12,784.20 for attorneys' fees and expenses. DE 1-1 at 4.

4

(3) failing to stop or prevent the transfer of $183,800.00 from Baxley Corp's bank account to Defendant Martha Baxley and Constance Baxley, wife of Defendant Rudolph Baxley; and
(4) failing to reverse the Transfers after the issuance of the TRO."

DE 12 54–55. Civil contempt is warranted when, by clear and convincing evidence, the court finds:

> "(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge;
> (2) . . . that the decree was in the movant's 'favor';
> (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and
> (4) . . . that [the] movant suffered harm as a result."

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288 (4th Cir. 2000). First, the TRO was a valid decree. And the managers knew about the TRO the day it was issued. DE 15 at 110 (Jonathan Keith was aware); DE 15 at 45 (Martha Baxley was aware); DE 15 at 108 (Rudolph Baxley was aware).[4] As managers, each was in a position of authority to ensure compliance with the TRO. There is no dispute that and (2) in the movant's favor. Therefore, the first two elements are met.

The third element requires the managers to have knowledge – at least constructive knowledge – of the acts that violated the TRO. Since the purpose of civil contempt is remedial, the managers' intent doesn't matter. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). Rather, all that is required is that the managers committed an intentional act with knowledge of the TRO, and that act violated the TRO. *See Citizens Bank of Md. v. Strumpf*, 37 F.3d 155, 159 (4th Cir. 1994). And the fourth and final element requires that the managers' violation harmed the trustee. Since the managers knew about the TRO, this Court asks whether the managers' intentional act violated the TRO and whether that violation harmed the trustee.

---

[4] The managers also knew about the sanctions order to transfer control to trustee. DE 15 at 44, 50–51, 107.

### A. Contempt finding 1 –Baxley's Pinnacle login credentials

The TRO orders the managers to "immediately tender all financial records of any and all assets of Baxley Corp and Baxley Leasing to the Trustee." DE at 12-1 at 5-8. The managers failed to provide trustee with the login credentials for Baxley's Pinnacle bank account. It wasn't until the Show Cause hearing, three weeks after the TRO was issued that the managers finally complied. To justify their failure, the managers argue that sharing the credentials would have compromised a separate account with the same credentials. DE 15 at 6. However, that argument does not render the TRO optional.

The managers further argue the login credentials were not "financial records," instead, the credentials were a "*means to access* financial records" DE 22 at 2. (emphasis added). However, tendering financial records means tendering the means to access those records. The managers cannot hand over a locked box of financial records without furnishing the key. If the managers were confused about the meaning of the TRO, they could have sought clarification from the court. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949). When they failed to seek clarification, they acted at their peril, for withholding the credentials was a violation of the TRO.

That violation caused the trustee harm. Had trustee been able to access Baxley's account earlier, he would have learned of the pending transfers and had the opportunity to stop them before they cleared the account. Therefore, the court did not abuse its discretion in finding the managers in contempt for failing to provide the Pinnacle login credentials.

### B. Contempt finding 2 – boxes of financial documents

An enforcement order, such as a TRO, establishes a presumption that a party possesses responsive documents. *United States v. Rylander*, 460 U.S. 752, 761 n.3 (1983). If that presumption is not refuted, a party who fails to produce those documents may be held in contempt.

The TRO required the managers to "immediately tender all [Baxley's] financial records." DE 12-1 at 5-8. Here, boxes of financial documents had not been turned over. DE 15 at 41. The documents were located at Baxley Headquarters (Martha Baxley's basement). The managers have done nothing to rebut the presumption that they had access to the documents. Their collective failure to tender these records was a violation of the TRO.

It is difficult to calculate damages because, at the time of the contempt order, the managers *still* had not turned over the documents. Civil contempt can be used to "enforce compliance with an order of the court." *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191 (1949). This violation harmed trustee because he spent time and money enforcing compliance with the TRO. Therefore, the bankruptcy court's contempt order was within its discretion.

### C. Contempt findings 3 & 4 – failing to stop or reverse the five pending transfers

The TRO prohibited the managers from "transferring any property or assets in Baxley Corp's ownership, possession, custody or control." DE 12-1 at 10-11. The managers had access to the Baxley bank account that would have shown the five pending transfers ($183,800). That access gave the managers constructive knowledge of all five transfers. The managers could have called the bank to stop or reverse the transfers. DE 15 at 77. The failure to do so was an intentional act.

The bankruptcy court found the managers violated the TRO by (1) failing to stop the transfers and (2) failing to reverse the transfers. DE 12-1 at 61-62. These two findings are analyzed together.

A "transfer" occurs on the "date of honor," not the date of deposit. *Barnhill v. Johnson*, 503 U.S. 393, 400 (1992); *see also In re Anderson Homes, Inc.*, No. 09-02062-8-SWH, 2013 WL 1279403, at *1 (Bankr. E.D.N.C. Mar. 28, 2013), *aff'd sub nom. Sparkman v. Am. Residential Servs., LLC*, 584 F. App'x 136 (4th Cir. 2014) (noting that "[t]he date that the check is honored is controlling…"). The date of honor is when the funds are available to the check's recipient. All the checks had been deposited before the TRO was issued, but neither the CFCU transfers nor the Ameritrade transfers were complete until after the TRO was issued.

1. CFCU Transfers

The two CFCU checks (transferring $53,900 to Martha Baxley) were deposited at 3:38 p.m. on November 9, just a few hours after trustee took control of Baxley. DE 14-4. The TRO was issued on November 10. The managers argue that there is "no evidence in the record that the checks to CFCU were not honored by Pinnacle Bank until after the TRO was issued." DE 22 at 8. That is incorrect. The CFCU bank receipt shows the bank planned to honor $10,600 of the $53,900 deposit on November 12 and the remaining $43,300 on November 17. DE 14-4. Martha Baxley testified that she could not access the funds from the checks until days after the deposit. That is clear and convincing evidence the funds did not "transfer" until November 17, 2021, seven days after the TRO was issued. Therefore, the failure to stop or reverse these pending CFCU transfers was a violation of the TRO.

2. Ameritrade Transfers

FedEx delivered the checks to Ameritrade on November 10 at 10:20 a.m. DE 14-3. Judge Warren issued an oral ruling TRO at 11:30 a.m. and a written one at 4:14 p.m. that afternoon. The managers argue there is no "evidence that the checks written to Ameritrade had not been honored and cleared before the TRO." Although the record is not crystal clear, the bankruptcy court found the Ameritrade transfer was still pending when the TRO was issued. This was not an abuse of discretion.

A party's "record of continuing and persistent violations" justified placing "the burden of any uncertainty in the decree on the shoulders" of the party who violated the court order. *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019). The managers had such a record. During the sanctions hearing, the managers perpetuated a falsehood that Martha Baxley was in Florida. In reality, she was in Raleigh depositing the CFCU checks. The managers refused to provide the Pinnacle login credentials. The managers withheld the boxes of paper financial documents. One of the managers failed to bring the required documents to a court-ordered meeting with trustee. Because of these persistent violations, the bankruptcy court was within its discretion to shift the burden to the managers to show that the Ameritrade transfer was completed after the TRO. The managers did not carry that burden. Therefore, the bankruptcy court could have found the Ameritrade transfers were pending when the TRO was issued. The managers violated the TRO by failing to stop or reverse those transfers.

3. Harm

The managers argue there is no harm because trustee was not entitled to the $183,800 in transferred funds. Presumably, because an outside creditor would have ultimately been entitled to funds, trustee was not harmed by the transfer. But the managers do not decide who is entitled to

what. That is a job for the bankruptcy court. Trustee was the sole owner of Baxley, and the managers funneled Baxley's funds into their own pockets. That is enough to show trustee was harmed. Therefore, the bankruptcy court's had clear and convincing evidence to find four instances of civil contempt.

## II. Compensatory damages spent litigating the managers' contempt

The bankruptcy court ordered the managers to pay trustee $18,134.20 in compensatory damages for the time and money trustee spent litigating the manager's contempt. Compensatory damages are recoverable for a finding of civil contempt. *See In re Walters*, 868 F.2d 665, 670 (4th Cir. 1989). "This Court reviews the imposition of sanctions and award of attorney's fees for abuse of discretion." *W.S. BadcockCorp. v. Beaman,* 531 B.R. 576, 581 (E.D.N.C. 2015) (citing *In re Weiss,* 111 F.3d 1159, 1169 (4th Cir. 1997); *Harman v. Levin,* 772 F.2d 1150, 1153 (4th Cir. 1985)). Courts have broad discretion when fashioning appropriate remedies for civil contempt, which may include "ordering the contemnor to reimburse the complainant for losses sustained and for reasonable attorney's fees." *In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995).

Here, after considering the appellee's affidavits [DE 13-2 at 377-386], the court ordered the managers to pay the trustee $18,134.20. That figure included compensation for the trustee's time, the forensic accountant's fees, and the attorney's fees. The managers claim they "were not provided adequate notice and opportunity to raise objections to the affidavits." DE 22 at 10. In a bankruptcy proceeding unsullied by civil contempt, U.S.C. § 330(a)(1) requires the court to give the parties notice before setting a trustee's compensation. But here, there has been a finding of civil contempt, so § 330(a)(1) is not binding.

The managers argue the bankruptcy court abused its discretion when it failed to consider the factors laid out in *Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714, 717-19 (5th Cir.

10

1974).[5] But *Johnson* dealt with setting compensatory damages for work done over an entire case. Here, the damages only reimbursed the trustee for the costs of litigating the contempt order. Therefore, the bankruptcy court did not abuse its discretion when it did not consider the *Johnson* factors.

The managers "acknowledge that the right to award civil contempt damages includes the right to include attorneys' fees as an element of the award provided such fees are justified." DE 20 at 18. But the managers argue there is "no basis in the law for an award of fees for the Appellee's time or fees for the accountant's time." *Id.* However, 11 U.S.C. § 330 provides that a "trustee," "attorney," and "professional person" may be entitled to reasonable compensation. An accountant may be a professional person. *Id.* at §§ 327, 330. That statute does not contemplate awarding compensatory damages for contempt, but it was not an abuse of discretion to reimburse the trustee for the time and money spent litigating the managers' contempt.

## CONCLUSION

For the reasons discussed below, the appeal [DE 1] is DENIED, and the decision of the bankruptcy court [DE 101][6] is AFFIRMED.

SO ORDERED, this ___ day of November 2022.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

---

[5] The Fourth Circuit adopted these factors in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978).
[6] Case No.: 18-03406-5-DMW